**M.L., Appellant–Respondent,**

v.

**MERIDIAN SERVICES, INC.,**
**Appellee–Petitioner.**

No. 18A02–1103–MH–233.

Court of Appeals of Indiana.

Oct. 28, 2011.

L. Ross Rowland, Deputy Public Defender, Public Defender's Office, Muncie, IN, Attorney for Appellant.

David J. Karnes, Dennis, Wenger & Abrell, P.C., Muncie, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

M.L. threatened suicide and drank rubbing alcohol and was admitted to a hospital emergency room. Meridian Services, Inc. ("Meridian"), petitioned to have M.L. involuntarily committed to a state-operated facility for a ninety-day period because he suffered from depression and alcoholism and was dangerous and gravely disabled. The trial court granted the petition and authorized the state-operated facility to administer medications to M.L.

M.L. appeals, arguing that the trial court's order is not supported by clear and convincing evidence that he is dangerous and gravely disabled and that the medications will substantially benefit him and the probable benefits outweigh any risk of harm. We conclude that there is clear and convincing evidence that M.L. is dangerous. However, we agree with M.L. that the evidence is insufficient to support the authorization to administer medication. Accordingly, we affirm M.L.'s temporary commitment and reverse the authorization to treat.

### Facts and Procedural History

The facts most favorable to the judgment show that M.L. is an alcoholic and suffers from depression. At some point, M.L. participated in a four-month substance abuse treatment program in Wisconsin. Later, M.L. voluntarily sought outpatient treatment for his substance abuse and depression from Meridian in Muncie.

On February 8, 2011, M.L. was admitted to the Henry County Hospital emergency room after threatening suicide and drinking rubbing alcohol. Tr. at 2, 5. Nancy McCauley, a mental health counselor for Meridian, met with M.L. in the emergency room. She observed that M.L. had "a great deal of trouble talking and expressing his thoughts" even though he was no longer considered intoxicated. *Id.* at 2. M.L. told her that he had a ten-year history of alcohol abuse, had struggled with depression, and had slashed his wrist at least once.

McCauley filed an application for emergency detention of M.L. in the Henry Superior Court, thereby initiating this case. McCauley alleged that M.L. was suffering from a psychiatric disorder and alcoholism and was dangerous to himself because he was "unable to maintain sobriety even with family supervision. Threatens suicide

when intoxicated-made a threat earlier that day. Has a history of cutting wrist and overdos[ing]." Appellant's App. at 12. She further alleged that she believed that if M.L. was not restrained immediately, he would "bring harm to himself." *Id.* The accompanying physician's emergency statement by Dr. Douglas Tannas stated that M.L. was "suicidal, with dangerous ingestion today." *Id.* at 11. The Henry Superior Court granted the application for emergency detention, and M.L. was admitted to IU Health Ball Memorial Hospital in Muncie.

On February 10, 2011, M.L. was examined by Dr. Nitin A. Khadilkar. Dr. Khadilkar filed a "Report Following Emergency Detention" in the Delaware Circuit Court, stating that there was probable cause to believe that M.L. was suffering from alcohol dependence and depression, was dangerous and gravely disabled, and required continued care and treatment. *Id.* at 8. Dr. Khadilkar attached a physician's statement, in which he opined that M.L. was dangerous to himself in that there was a substantial risk that he would harm himself by continued alcohol use including the use of rubbing alcohol. *Id.* at 9. He further opined that M.L. was gravely disabled due to the impairment and deterioration of his judgment as shown by his continued alcohol use despite the consequences. Finally, Dr. Khadilkar stated that outpatient treatment would be inadequate and that M.L. was in need of custody, care, or treatment in an appropriate facility due to his limited insight and judgment.

On February 15, 2011, the trial court held a commitment hearing, at which Dr. Khadilkar, McCauley, and M.L. testified.

Dr. Khadilkar testified that M.L. had a long history of alcohol abuse, explaining that he could not stop drinking and frequently relapsed despite the fact that he had received ongoing outpatient treatment and had been incarcerated once or twice as a consequence of his alcohol use. Dr. Khadilkar testified that M.L. had drunk rubbing alcohol at least once before the recent incident, and "that can be really dangerous and it can kill him ... [h]is liver is in real bad shape, most likely because of the alcohol abuse." Tr. at 5. Dr. Khadilkar further testified that M.L. had been threatening suicide, "sending text messages about killing himself." *Id.* Finally, Dr. Khadilkar testified that M.L. was gravely disabled and dangerous to himself and that the best treatment would be an inpatient facility.

The same day, the trial court issued an order finding that M.L. was suffering from the mental illnesses of alcohol dependence and depression, was dangerous to himself, was gravely disabled, and was in need of treatment in a state operated facility. Appellant's App. at 20–21. Accordingly, the trial court committed M.L. to a state-operated facility for a temporary period not to exceed ninety days. In addition, the trial court's commitment order stated, "The designated facility is hereby granted the AUTHORITY TO TREAT [M.L.] WITH MEDICATION. Medication includes Celexa and Neurontin.[1] Continued medication will be a substantial benefit to [M.L.] and its probable benefits outweigh any risk of harm." *Id.*[2] M.L. was subsequently admitted to Richmond State Hospital. He appeals.

---

1. Celexa is used to treat depression. Tr. at 6. There is no evidence in the record regarding Neurontin's uses.

2. At the hearing, the trial court explained to M.L., "If you don't take those medications then [the state-operated facility] will have authority to see to it that you do." Tr. at 11.

## Discussion and Decision

### I. Dangerous and Gravely Disabled

 M.L. argues that his involuntary commitment is not supported by clear and convincing evidence. When we review the sufficiency of the evidence of a civil commitment, we consider only the evidence most favorable to the trial court's judgment and the reasonable inferences arising therefrom.[3] *Golub v. Giles,* 814 N.E.2d 1034, 1038 (Ind.Ct.App.2004), *trans. denied* (2005). We will not reweigh the evidence or judge the witnesses' credibility. *Commitment of M.M. v. Clarian Health Partners,* 826 N.E.2d 90, 96 (Ind.Ct.App.2005), *trans. denied.* We will affirm the trial court's commitment order if it represents a conclusion that a reasonable person could have drawn, even if other reasonable conclusions are possible. *K.F. v. St. Vincent Hosp. & Health Care Ctr.,* 909 N.E.2d 1063, 1066 (Ind.Ct.App.2009).

 In Indiana, a court may order a temporary commitment of not more than ninety days for an individual who is mentally ill and *either* dangerous *or* gravely disabled. Ind.Code § 12–26–6–1. "Civil commitment is a significant deprivation of liberty that requires due process protections." *C.J. v. Health & Hosp. Corp. of Marion County,* 842 N.E.2d 407, 409 (Ind. Ct.App.2006) (citing *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). "Because everyone exhibits some abnormal conduct at one time or another, loss of liberty calls for a showing that the individual suffers from something more serious than is demon-strated by idiosyncratic behavior." *M.M.,* 826 N.E.2d at 97. The petitioner, here Meridian, is required to prove by clear and convincing evidence that the individual is (1) mentally ill and (2) *either* dangerous *or* gravely disabled and that (3) commitment is appropriate. Ind.Code § 12–26–2–5(e). In order to carry its burden of proof, the petitioner is not required to prove that the individual is *both* dangerous *and* gravely disabled. *A.L. v. Wishard Health Servs., Midtown Cmty. Mental Health Ctr.,* 934 N.E.2d 755, 762 (Ind.Ct.App.2010), *trans. denied* (2011). However, "[t]here is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom." *Commitment of J.B. v. Midtown Mental Health Ctr.,* 581 N.E.2d 448, 451 (Ind.Ct.App.1991), *trans. denied.*

M.L. does not challenge the trial court's finding that he is suffering from mental illnesses, namely alcohol dependence and depression. *See* Ind.Code § 12–7–2–130 (defining mental illness as a psychiatric disorder that "substantially disturbs an individual's thinking, feeling, or behavior" and that "impairs the individual's ability to function," including mental retardation, alcoholism, and drug addiction). Rather, M.L. contends that Meridian failed to present sufficient evidence that he was dangerous and gravely disabled at the time of the hearing.

"Dangerous" is defined as "a condition for which an individual, as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind.Code § 12–7–2–53. The

3. M.L.'s ninety-day commitment period has expired. Generally, we dismiss cases that are moot, but we may decide a moot case on its merits when it involves questions of great public interest that are likely to recur. *G.Q. v. Branam,* 917 N.E.2d 703, 706 (Ind.Ct.App. 2009). M.L. notes this exception to the mootness doctrine, and Meridian presents no argu-ment that it does not apply. Therefore, we address the merits of his case. *See Golub v. Giles,* 814 N.E.2d 1034, 1036 n. 1 (Ind.Ct. App.2004) ("The question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society."), *trans. denied* (2005).

behavior used as an index of a person's dangerousness must be the result of that person's mental illness. *J.B.*, 581 N.E.2d at 452. "Gravely disabled" is defined as a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:

> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or

> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind.Code § 12–7–2–96.

M.L. contends that Dr. Khadilkar's testimony is insufficient to establish that M.L. is dangerous and gravely disabled because Dr. Khadilkar "seemed to be relying on [M.L.'s] past treatment and not his current situation." Appellant's Br. at 7. In support, M.L. quotes the following standard: "In determining whether the totality of the circumstances support an involuntary commitment we consider the gravity of the committee's behavior leading to hospital admission, the committee's behavior in the hospital, and the relationship between problematic behaviors and the committee's mental illness." *Commitment of S.T. v. Cmty. Hosp. N.*, 930 N.E.2d 684, 690 (Ind. Ct.App.2010).[4]

We disagree that Dr. Khadilkar's opinions that M.L. was dangerous and gravely disabled were based only on M.L.'s past behavior and treatment. Our review of the record before us shows that Dr. Khadilkar testified that he had M.L.'s treatment record from Meridian and was familiar with the outpatient treatment M.L. had received over the last few months. Dr. Khadilkar observed that even with the recent outpatient treatment, M.L. was still drinking.[5] Tr. at 5. Dr. Khadilkar also testified that "[M.L.] has been threatening suicide, sending text messages about killing himself." *Id.* Further, Dr. Khadilkar testified that when he interviewed M.L. at Ball Memorial Hospital, M.L. was not honest with him regarding the duration and persistence of his alcoholism because M.L. did not reveal to Dr. Khadilkar that he had received outpatient treatment during the past ten years.

Along with the aforementioned testimony regarding M.L.'s current state, Dr. Khadilkar testified that in addition to M.L.'s recent use of rubbing alcohol, M.L. had drunk it at least once before. Dr. Khadilkar testified that drinking rubbing alcohol could "kill" M.L. *Id.* We conclude that Meridian presented clear and convincing evidence that M.L., as a result of alcoholism and depression, presented a substantial risk that he would harm himself. *See* Ind.Code § 12–7–2–53. Because Meridian is not required to prove that M.L. is both dangerous and gravely disabled, we need not address whether the evidence also established that M.L. was gravely disabled.

### II. Forced Medication

M.L. also argues that there was no testimony to support the trial court's finding that medications, specifically Celexa and Neurontin, would substantially benefit M.L. and that their probable benefits outweighed any risk of harm. Appellant's Br. at 5. Meridian did not respond to this argument.

---

4. M.L. erroneously attributes this statement to *GPH v. Giles*, 578 N.E.2d 729, 731 (Ind.Ct. App.1991).

5. M.L. disputes that he was still drinking and cites his testimony to that effect. Tr. at 10. However, we are not permitted to reweigh the evidence or judge witness credibility. *See M.M.*, 826 N.E.2d at 96.

An appellee's failure to respond to an issue raised in an appellant's brief is, as to that issue, akin to failing to file a brief. This failure does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. However, counsel for appellee remains responsible for controverting arguments raised by appellant. For appellant to win reversal on the issue, he must establish only that the lower court committed prima facie error. Prima facie means at first sight, on first appearance, or on the face of it.

*Khaja v. Khan,* 902 N.E.2d 857, 868 (Ind. Ct.App.2009) (citation omitted).

Our supreme court has recognized that a "patient has a liberty interest in remaining free of unwarranted intrusions into his physical person and his mind while within an institution" and that "[i]t cannot be seriously disputed that forced medication of a mental patient interferes with that liberty interest." *In re Mental Commitment of M.P.,* 510 N.E.2d 645, 646 (Ind. 1987). Therefore, our supreme court has held that a petitioner

> must demonstrate by clear and convincing evidence that: 1) a current and individual medical assessment of the patient's condition has been made; 2) that it resulted in the honest belief of the psychiatrist that the medications will be of substantial benefit in treating the condition suffered, and not just in controlling the behavior of the individual; 3) and that the probable benefits from the proposed treatment outweigh the risk of harm to, and personal concerns of, the patient.
>
> Equally basic to court sanctionable forced medications are the following three limiting elements. First, the court must determine that there has been an evaluation of each and every other form of treatment and that each and every alternative form of treatment has been specifically rejected. It must be plain that there exists no less restrictive alternative treatment and that the treatment selected is reasonable and is the one which restricts the patient's liberty the least degree possible. Inherent in this standard is the possibility that, due to the patient's objection, there may be no reasonable treatment available. This possibility is acceptable. The duty to provide treatment does not extend beyond reasonable methods. Second, the court must look to the cause of the commitment. Some handicapped persons cannot have their capacities increased by anti-psychotic medication. The drug therapy must be within the reasonable contemplation of the committing decree. And thirdly, the indefinite administration of these medications is not permissible. Many of these drugs have little or no curative value and their dangerousness increases with the period of ingestion. The court must curtail the time period within which they may be administered. If a patient does not substantially benefit from the medication, it should no longer be administered.

*Id.* at 647–48.[6]

Our review of the record reveals that the only evidence presented regarding the medications Celexa (citalopram) and Neurontin (gabapentin) was that Dr. Khadilkar wanted an order to treat and that Celexa was for M.L.'s depression. Tr. at 6. There is no evidence in the record as to what conditions Neurontin is used to treat. There is no evidence, let alone clear and convincing evidence, that Celexa and Neu-

---

6. Another panel of this Court has held that the time limit requirement is satisfied where, as here, the commitment is temporary. *See G.Q.,* 917 N.E.2d at 709.

rontin would be of substantial benefit in treating M.L.'s mental illnesses, and not just in controlling his behavior, and that the probable benefits from the treatment outweighed the risk of harm to, and personal concerns of, M.L. Finally, there is no evidence that alternative treatments were considered, and that these medications represented the least restrictive treatments. Accordingly, we reverse the trial court's authorization to treat M.L. with Celexa and Neurontin. Although M.L.'s temporary commitment order is no longer in effect, we observe that any future authorization of forced treatment must comply with *M.P. See G.Q.*, 917 N.E.2d at 708–09 (examining evidence supporting trial court's authorization for forced treatment and affirming same); *J.S. v. Ctr. for Behavioral Health,* 846 N.E.2d 1106, 1114–17 (Ind.Ct.App.2006) (same); *In re Commitment of G.M.,* 743 N.E.2d 1148, 1152–53 (Ind.Ct.App.2001) (same).

Based on the foregoing, we affirm the temporary commitment of M.L. but reverse the authorization to treat M.L. with medication.

Affirmed in part and reversed in part.

BAILEY, J., and MATHIAS, J., concur.