**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOEL M. SCHUMM**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ANNA KIRKMAN**
Associate Counsel
Wishard Health Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE CIVIL COMMITMENT OF S.I., | ) | |
| | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1304-MH-146 |
| | ) | |
| MIDTOWN CMHC, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49D08-1302-MH-7011

**October 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

S.I. was arrested for reckless driving. The Marion County Sheriff's Department decided to transfer her from the jail to Wishard Health Services/Midtown Community Mental Health Center ("Midtown"). S.I. was agitated, paranoid, and suffering from delusions. Midtown subsequently filed a petition for temporary involuntary commitment stating that S.I. was suffering from a mental illness which caused her to be gravely disabled and in danger of harm. Following a hearing, the trial court granted Midtown's petition and entered an order of temporary commitment concluding that S.I. was dangerous to herself, dangerous to others, and gravely disabled. S.I. appeals, arguing that the trial court's order of commitment is not supported by clear and convincing evidence. Finding the evidence sufficient, we affirm.

**Facts and Procedural History**

On February 14, 2013, officers from the Marion County Sheriff's Department brought S.I. to Midtown after she was pulled over and arrested for reckless driving. When S.I. arrived, she was agitated and paranoid. She was "saying things like, she was raped by the police. She also … mentioned something along the lines of NCIS has killed her father." Tr. at 6. She was delusional, stating that right before she was arrested, she stopped at Starbucks, and she knew that they slipped some kind of drug into her coffee. S.I. insisted that upon her arrest, police had fractured her hand. Despite the fact that x-rays revealed no injury, S.I. was convinced that her hand was broken and that medical personnel must have "posed [her] hand in a pose where you can't see that the bone sticks out." *Id*. at 36.

After being transferred into the inpatient unit, S.I. was treated by Dr. Seymon Faynboym. Based upon available medical history and observation, Dr. Faynboym diagnosed S.I. with bipolar mania with psychotic features. *Id*. at 7. Dr. Faynboym's diagnosis was based on S.I.'s paranoia, delusions, rapid speech, response to internal stimuli, agitation, lack of sleep, poor concentration, illogical thought process, and non-sequential formation of ideas. Dr. Faynboym opined that S.I.'s paranoia, in particular, causes her to be confrontational and does not allow her to function with others. While in the inpatient unit, S.I. was verbally aggressive toward other patients and had several confrontations. Other patients were upset and complained about S.I.'s confrontational behavior. S.I. refused medication, claiming that if she were to take the recommended antipsychotic medication, she would lose control and rage. Dr. Faynboym was especially concerned regarding malnutrition because S.I.'s paranoia had caused her to exhibit a poor appetite. S.I. had lost enough weight that she had to fold her pants over.

Midtown filed a petition for involuntary commitment on February 22, 2013. The trial court held a commitment hearing on March 7, 2013. Dr. Faynboym testified regarding his observations of S.I. and his belief that her mental illness causes her to be gravely disabled and unable to care for herself. At the time of the commitment hearing, in addition to his concern for S.I.'s poor appetite and malnourishment, it was Dr. Faynboym's understanding that she had no income to support herself. Dr. Faynboym testified that S.I. lacked any insight into her mental illness and that, due to her paranoid delusions, "I believe strongly that she will be dangerous to herself, and then the lack of judgment that she has will probably have

3

her end up back … into the inpatient psychiatric unit." *Id.* at 10. Dr. Faynboym also opined that S.I. will be dangerous to others due to her confrontational behavior and deteriorating judgment. Dr. Faynboym recommended that, while temporarily committed, S.I. could be treated with Risperidone for psychosis and Depakote for bipolar mania. He testified that he believed that temporary commitment to the inpatient unit was the best and least restrictive treatment for S.I.

S.I.'s mother testified at the commitment hearing that S.I. had been hospitalized due to her psychiatric disorder four times in the past four years. S.I.'s mother recalled that two of the hospitalizations were in a Tennessee mental hospital, and one of the hospitalizations occurred after S.I.'s father had S.I. arrested in Florida. S.I.'s mother expressed deep concern regarding S.I.'s erratic and paranoid behavior and stated that she believed temporary commitment was in S.I.'s best interests.

S.I. also testified at the hearing. During her testimony, she exhibited paranoia regarding police, medical personnel, other patients, and her mother. She demonstrated a complete lack of insight regarding her behavior. At the conclusion of the hearing, the trial court granted Midtown's petition for temporary commitment of S.I. This appeal ensued.

**Discussion and Decision**

S.I. concedes that her temporary commitment has expired. Therefore, we cannot render effective relief to her. *See In re Commitment of J.B.*, 766 N.E.2d 795, 798 (Ind. Ct. App. 2002). Although generally we dismiss cases that are moot, we may decide a moot case on its merits when it involves questions of great public interest that are likely to recur. *M.L.*

4

*v. Meridian Servs., Inc.*, 956 N.E.2d 752, 755 n.3 (Ind. Ct. App. 2011). As noted by S.I., this court has frequently decided to address the merits of appeals regarding involuntary mental health commitments under the public interest exception to the mootness doctrine. *See*, *e.g.*, *Golub v. Giles*, 814 N.E.2d 1034, 1036 n.1 (Ind. Ct. App. 2004), *trans. denied* (2005). Midtown presents no argument to the contrary, and thus we will address the merits of S.I.'s challenge to her commitment.

S.I.'s sole assertion on appeal is that the trial court's order for her involuntary commitment is not supported by clear and convincing evidence. Our well-settled standard of review and our relevant statutory law regarding civil commitment is as follows:

> When we review the sufficiency of the evidence of a civil commitment, we consider only the evidence most favorable to the trial court's judgment and the reasonable inferences arising therefrom. We will not reweigh the evidence or judge the witnesses' credibility. We will affirm the trial court's commitment order if it represents a conclusion that a reasonable person could have drawn, even if other reasonable conclusions are possible.
>
> In Indiana, a court may order a temporary commitment of not more than ninety days for an individual who is mentally ill and either dangerous or gravely disabled. Ind. Code § 12-26-6-1. Civil commitment is a significant deprivation of liberty that requires due process protections. Because everyone exhibits some abnormal conduct at one time or another, loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior. The petitioner … is required to prove by clear and convincing evidence that the individual is (1) mentally ill and (2) *either* dangerous *or* gravely disabled and that (3) commitment is appropriate. Ind. Code § 12-26-2-5(e). In order to carry its burden of proof, the petitioner is not required to prove that the individual is *both* dangerous *and* gravely disabled. However, there is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom.

*M.L.*, 956 N.E.2d at 755 (quotation marks and some citations omitted).

S.I. does not challenge the trial court's finding that she suffers from mental illness pursuant to Indiana Code Section 12-7-2-130, which defines mental illness as a psychiatric disorder that substantially disturbs an individual's thinking, feeling, or behavior and impairs the individual's ability to function. Instead, S.I. contends that Midtown failed to present sufficient evidence that she was gravely disabled, dangerous to herself, or dangerous to others. Because Midtown is not required to prove that S.I. is both gravely disabled and dangerous to herself or others, *see M.L.*, 956 N.E.2d at 755, we need only address whether the evidence was sufficient to support the trial court's finding that S.I. is gravely disabled.

"Gravely disabled" is defined as

a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:

(1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; *or*

(2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind. Code § 12-7-2-96 (emphasis added). As we have often noted, because this statute is written in the disjunctive, a trial court's finding of grave disability survives if we find that there was sufficient evidence to prove either that the individual is unable to provide for her basic needs or that her judgment, reasoning, or behavior is so impaired or deteriorated that it results in her inability to function independently. *See T.A. v. Wishard Health Servs.*, 950 N.E.2d 1266, 1271 n.2 (Ind. Ct. App. 2011); *A.L. v. Wishard Health Servs.*, 934 N.E.2d 755, 762 n.2 (Ind. Ct. App. 2010), *trans. denied* (2011).

6

The evidence most favorable to the trial court's determination that S.I. is gravely disabled indicates that, due to her bipolar mania with psychotic features, S.I. suffers from, among other things, extreme paranoia, agitation, delusions, lack of sleep, poor concentration, illogical thought process, and non-sequential formation of ideas. S.I. has a history of arrests and hospitalizations due to her mental illness. Dr. Faynboym testified that S.I. lacked any insight regarding her illness and, during her time in the inpatient unit, she had refused all medication, except for one dose of the mood stabilizer Depakote the day before the commitment hearing. Dr. Faynboym stated that S.I.'s paranoid and delusional behavior had further deteriorated since her hospitalization and that she was confrontational and verbally aggressive toward other patients. Dr. Faynboym stated that S.I.'s paranoia simply does not "allow her to function with others." Tr. at 7. He further indicated that S.I.'s paranoia caused her to exhibit a poor appetite, and therefore he was concerned about malnutrition. Dr. Faynboym testified that it was his understanding that S.I. did not have any source of income to provide for herself. Dr. Faynboym opined, "I believe strongly that she will be dangerous to herself, and then the lack of judgment that she has will probably have her end up back … into the inpatient psychiatric unit." *Id*. at 10. This evidence clearly and convincingly demonstrates that S.I. has a substantial impairment or an obvious deterioration of her judgment, reasoning, and behavior that has resulted in her inability to function independently. *See In re Involuntary Commitment of A.M.*, 959 N.E.2d 832, 836 (Ind. Ct. App. 2011) (determining that evidence supported trial court's determination of grave disability where

patient denied mental illness, refused to take medication, and engaged in agitated and aggressive behavior).

S.I. points to evidence that she has a place to live, is able to eat, and had only verbal confrontations with other patients as proof that she is able to function independently, and therefore she is not gravely disabled. This is merely an invitation for us to reweigh the evidence, which we cannot do. *See M.L.*, 956 N.E.2d at 755. The trial court's conclusion that S.I. is gravely disabled represents a conclusion that a reasonable person could have drawn. As stated above, we need not address whether the evidence also establishes that S.I. was dangerous to herself or others. Accordingly, we affirm the trial court's commitment order.[1]

Affirmed.

BARNES, J., and PYLE, J., concur.

---

[1] We note that the trial court found that S.I. was gravely disabled, dangerous to herself, and dangerous to others. S.I. urges that, in the event that we affirm the commitment, "if the evidence is found sufficient on less than all three bases of the trial court's order," we should remand for the trial court to issue an amended commitment order. Appellant's Reply Br. at 4. As Midtown was required to prove only one statutory basis for commitment, we decline to review the sufficiency of the evidence regarding any other basis. Moreover, S.I. cites us to no authority, and we are unaware of any, that remand would be appropriate even under the circumstances suggested.