**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JENNY R. BUCHHEIT**
**STEPHEN E. REYNOLDS**
Ice Miller LLP
Indianapolis, Indiana

FILED
Jun 25 2014, 9:54 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE CIVIL COMMITMENT OF M.S., | ) ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 49A02-1311-MH-939 ) |
| GALLAHUE MENTAL HEALTH SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara Collins, Senior Judge
Cause No. 49D08-1310-MH-37027

**June 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

For the third time in three months, police escorted M.S. to a hospital emergency room after he was found digging in trash and exhibiting disorganized behavior. Doctors at Community Hospital North/Gallahue Mental Health Services (hereinafter "Community") determined that M.S. suffers from schizoaffective disorder with psychotic features. Community subsequently filed a petition for temporary involuntary commitment stating that M.S. was suffering from a psychiatric disorder which caused him to be gravely disabled and in danger of harm. Following a hearing, the trial court granted Community's petition and entered an order of temporary commitment concluding that M.S. was gravely disabled and dangerous to himself. M.S. appeals, arguing that the trial court's commitment order is not supported by clear and convincing evidence. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

On September 25, 2013, police officers escorted forty-two-year-old M.S. to the emergency room at Community. M.S., who is homeless, was exhibiting disorganized behavior and had been digging in trash. He also claimed that he did not need food or medicine. Police had already escorted M.S. to the emergency room twice in the prior two months. Once, they brought M.S. in after he had been aggressive on Monument Circle. On another occasion, police were contacted after M.S. approached a group of boys at a park. Each time, M.S. "presented as disorganized." Tr. at 11. During the current hospital visit, M.S. did not cooperate and was transferred to the psychiatric intensive care unit as a result of his agitation and ongoing disorganized behavior. Upon his admission to the unit, Dr. Syed

2

Khan examined M.S. Dr. Khan observed that, in addition to his disorganized behavior, M.S. was "preoccupied by certain thoughts, [and] showed limited insight into why he needed to be in the hospital. [M.S.] was not able to give any logical explanation for why police brought him to the hospital and he said he wouldn't take any medications." *Id*. at 7. Dr. Khan diagnosed M.S. with schizoaffective disorder, a chronic illness, due to his thought and mood disorder symptoms. His thought disorder symptoms included "thought insertion, thought broadcasting, paranoid preoccupation, [and] delusional thinking." *Id*. at 8. His mood disorder symptoms included "fluctuations of mood, ongoing rambling, [and] presentation as hypomania and mania symptoms." *Id*.

Community filed a petition for involuntary commitment on October 2, 2013. The trial court held a commitment hearing on October 11, 2013. Dr. Kahn testified regarding his diagnosis of M.S. and his belief that M.S.'s mental illness causes him to be gravely disabled and unable to care for himself. At the time of the commitment hearing, in addition to his concern that M.S. is homeless and without any consistent means to provide his own shelter, income, or food, Dr. Kahn was concerned that M.S. lacks any insight into his mental illness or into his other serious medical conditions which include untreated diabetes, hypertension, and thyroid disease. Dr. Kahn testified that M.S. "refers to the United States as his home and God as his family, so there is no set regular way of obtaining food, shelter, or medical care." *Id*. at 10. Dr. Kahn opined that M.S. is unable to function independently as a result of his limited decision-making capacity and his belief that he does not need any medical care, especially for his untreated diabetes and hypertension. Dr. Kahn explained, "[a]nother

individual might refuse treatment or a procedure after considering the facts or the risks and the benefits. [M.S.] is not in a position to and does not want to consider the risks and benefits of treatment. He doesn't understand that process." *Id*. at 14. Dr. Kahn recommended that, while temporarily committed, M.S. could be treated with a once-per-month dose of antipsychotic medication to control his thought and mood disorders and to allow him to then "gain insight into his general medical condition" so that he can "receive help for his hypertension, diabetes, and thyroid disorders." *Id*. at 16. Dr. Khan testified that he believed that temporary commitment to the inpatient unit was the best and least restrictive treatment for M.S. and that he expected M.S. would need to be committed for no more than one week.

M.S. also testified at the hearing. During his testimony, he exhibited paranoia regarding medical personnel and disagreed with the opinion that he suffers from any mental illness. Although he acknowledged his thyroid disease, he demonstrated no understanding of his diabetes or hypertension. At the conclusion of the hearing, the trial court found that M.S. is gravely disabled and dangerous to himself and granted Community's petition for temporary commitment. This appeal ensued.

## Discussion and Decision

M.S. concedes that his temporary commitment has expired. Therefore, we cannot render effective relief to him. *See In re Commitment of J.B.*, 766 N.E.2d 795, 798 (Ind. Ct. App. 2002). Although generally we dismiss cases that are moot, we may decide a moot case on its merits when it involves questions of great public interest that are likely to recur. *M.L. v. Meridian Servs., Inc.*, 956 N.E.2d 752, 755 n.3 (Ind. Ct. App. 2011). As noted by M.S.,

4

this Court has frequently chosen to address the merits of appeals regarding involuntary mental health commitments under the public interest exception to the mootness doctrine. *See*, *e.g.*, *Golub v. Giles*, 814 N.E.2d 1034, 1036 n.1 (Ind. Ct. App. 2004), *trans. denied*. We have done so because "[t]he question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society." *J.B.*, 766 N.E.2d at 798. Community maintains that the instant case does not involve a question of great public interest and urges that we dismiss the appeal. We decline to do so and choose to address the merits of M.S.'s challenge to his commitment.[1]

M.S.'s sole assertion on appeal is that the trial court's order for his involuntary commitment is not supported by clear and convincing evidence. Our well-settled standard of review and our relevant statutory law regarding civil commitment are as follows:

> When we review the sufficiency of the evidence of a civil commitment, we consider only the evidence most favorable to the trial court's judgment and the reasonable inferences arising therefrom. We will not reweigh the evidence or judge the witnesses' credibility. We will affirm the trial court's commitment order if it represents a conclusion that a reasonable person could have drawn, even if other reasonable conclusions are possible.
>
> In Indiana, a court may order a temporary commitment of not more than ninety days for an individual who is mentally ill and either dangerous or gravely disabled. Ind. Code § 12-26-6-1. Civil commitment is a significant deprivation of liberty that requires due process protections. Because everyone

---

[1] Although we state that we "choose" to address the merits of this appeal, we recognize that this Court has taken a very broad approach to civil commitment cases and has essentially determined that all appeals from involuntary commitments, although moot, present questions of great public interest that are likely to recur. In other words, the exception appears to have swallowed the rule. In many cases, an appellant simply disagrees with the opinions of medical personnel and their recommended treatment plan, which may include involuntary commitment, and in those circumstances, we are hard-pressed to say that the appellant's disagreement constitutes a question of great public interest, much less one likely to recur. Moving forward, we should simply acknowledge that involuntary mental health commitments inherently involve such significant questions of public interest that they always warrant review or we should actually apply the mootness doctrine as originally enunciated.

exhibits some abnormal conduct at one time or another, loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior. The petitioner … is required to prove by clear and convincing evidence that the individual is (1) mentally ill and (2) *either* dangerous *or* gravely disabled and that (3) commitment is appropriate. Ind. Code § 12-26-2-5(e). In order to carry its burden of proof, the petitioner is not required to prove that the individual is *both* dangerous *and* gravely disabled. However, there is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom.

*M.L.*, 956 N.E.2d at 755 (quotation marks and some citations omitted).

M.S. does not challenge the trial court's finding that he suffers from mental illness pursuant to Indiana Code Section 12-7-2-130, which defines mental illness as a psychiatric disorder that substantially disturbs an individual's thinking, feeling, or behavior and impairs the individual's ability to function. Instead, M.S. contends that Community failed to present sufficient evidence to support the trial court's findings that he is gravely disabled and dangerous to himself. Because Community is not required to prove that M.S. is both gravely disabled and dangerous to himself, *see id.*, we need only address whether the evidence was sufficient to support the trial court's finding that M.S. is gravely disabled.

"Gravely disabled" is defined as

a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:

(1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; *or*

(2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

6

Ind. Code § 12-7-2-96 (emphasis added). As we have often noted, because this statute is written in the disjunctive, a trial court's finding of grave disability survives if we find that there was sufficient evidence to prove either that the individual is unable to provide for his basic needs or that his judgment, reasoning, or behavior is so impaired or deteriorated that it results in his inability to function independently. *See T.A. v. Wishard Health Servs.*, 950 N.E.2d 1266, 1271 n.2 (Ind. Ct. App. 2011); *A.L. v. Wishard Health Servs.*, 934 N.E.2d 755, 762 n.2 (Ind. Ct. App. 2010), *trans. denied* (2011).

The evidence most favorable to the trial court's determination that M.S. is gravely disabled indicates that M.S. is homeless and without any consistent means to provide his own shelter, income, or food. Due to his schizoaffective disorder, M.S. suffers from disorganized behavior and various other symptoms of thought and mood disorders. M.S. has a history of hospitalizations due to his mental illness. Dr. Kahn testified that M.S. lacks any insight regarding his mental illness as well as his other untreated serious medical conditions, and that during his time in the inpatient unit, he had refused all medication and received only a forced injection of medication to control his violent outbursts. Dr. Kahn opined that M.S.'s lack of insight into both his mental and physical condition has resulted in "a very limited ability to take care of himself as demonstrated by poor self[-]care." Tr. at 10. The evidence presented clearly and convincingly demonstrates that M.S. has a substantial impairment of his judgment, reasoning, and behavior that has resulted in his inability to function independently.

M.S. points to evidence that he has social security income and is able to stay in a shelter as proof that he can function independently, and therefore he is not gravely disabled.

This is merely an invitation for us to reweigh the evidence, which we cannot do. *See M.L.*, 956 N.E.2d at 755. The trial court's conclusion that M.S. is gravely disabled represents a conclusion that a reasonable person could have drawn. As stated above, we need not address whether the evidence also establishes that M.S. is dangerous to himself or others. Accordingly, we affirm the trial court's commitment order.

Affirmed.

BAKER, J., and BARNES, J., concur.