

**FILED**
Dec 16 2014, 10:39 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**JARRELL B. HAMMOND**
Lewis Wagner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE CIVIL COMMITMENT OF W.S., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1404-MH-274 |
| | ) | |
| ESKENAZI HEALTH, MIDTOWN COMMUNITY MENTAL HEALTH, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49F03-9404-MH-232

**December 16, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

W.S. appeals the trial court's order on review of his regular mental health commitment. W.S. has been involuntarily committed to Eskenazi Health, Midtown Community Mental Health ("Midtown") pursuant to a regular commitment since March 2009. Following a hearing upon W.S.'s petition for review, the trial court determined that W.S. is mentally ill and gravely disabled and should remain under a regular commitment at Midtown for a period of time expected to exceed ninety days. The court's order provided, as a condition of the regular commitment, that W.S. take all medication as prescribed. W.S. argues that the trial court's order is not supported by clear and convincing evidence. Finding clear and convincing evidence that W.S. is mentally ill and gravely disabled but that the trial court should hear additional evidence regarding the portion of the order regarding medication, we affirm and remand for further hearing.

## Facts and Procedural History

Forty-three-year-old W.S. suffers from paranoid schizophrenia. W.S.'s involvement with the civil commitment process began as early as 1994 when an application for emergency detention was filed and resulted in him being temporarily committed. That temporary commitment expired in August 1994, and it appears that W.S. was not subject to any commitment for the next four years. However, in April 1998, W.S. was placed on regular commitment for a period of four years until the commitment was terminated in September 2002. Thereafter, in May 2008, an application for emergency detention was filed, but the subsequent petition for W.S.'s involuntary commitment was denied by the trial court. In

September 2008, another application for emergency detention was filed, and again the subsequent petition for W.S.'s involuntary commitment was denied by the trial court.

Applications for emergency detention were filed in January and February 2009, and a petition for involuntary commitment was filed on March 2, 2009. Following a hearing, W.S. was ordered involuntarily committed under a regular commitment to Midtown. From February 2010 to December 2013, the trial court periodically reviewed the facts supporting W.S.'s regular commitment based upon written reports and evidence heard during review hearings and each time ordered that his commitment be continued. Pursuant to his regular commitment, W.S. lives independently but must attend scheduled appointments at Midtown and receive monthly medication injections.

On February 12, 2014, W.S. filed a petition for review of his regular commitment. A review hearing was held on March 25, 2014. During the hearing, Midtown medical director and chief of psychiatrist services, Dr. Jeffrey Kellams, testified that W.S. has been a patient of Midtown going on thirty years. Dr. Kellams stated that W.S. was first diagnosed with paranoid schizophrenia in the "early 1980s" and Dr. Kellams has been actively involved in his treatment over the last three or four years. Tr. at 6. Based upon a recent medical examination of W.S., Dr. Kellams concluded the following:

> [W.S.] suffers a chronic psychotic illness, paranoid schizophrenia, which has been present for at least three decades, if not longer. It has resulted in his having very poor insight, poor judgment. With medication, he actually does reasonably well. Without medication, he goes into a state of denial, feeling that he does not need to see the psychiatrist, does not need to seek medication; becomes delusional, paranoid, and on multiple occasions has come to the attention of the public or police because of deviant behavior …. [T]he reality of it is if we do not continue the commitment, he very likely will quit coming

3

for appointments. He does not see that he needs ongoing care, and the subsequent result of that would be lack of medication and a deterioration into a chronic psychotic state which will bring him to the attention of family, police, neighbors, whatever, once again.

*Id*. at 7-9. Dr. Kellams acknowledged that W.S. is "being forced to take medication against his will pursuant to the commitment order" but that the commitment order was absolutely necessary and in W.S.'s best interests because W.S. would not otherwise voluntarily come in and take his medication. *Id*. at 13.

Midtown clinical nurse specialist Christopher Miller testified that he provides care to W.S. frequently and that W.S. suffers from ongoing paranoia that "would definitely get worse" if not medicated. *Id*. at 17. Nurse Miller stated that W.S. is favorably responding to the prescribed Haldol Decanoate injections and that W.S. would definitely fail to "show up" to take his medication if he were not under a commitment order. *Id.* at 17.

W.S. also testified at the hearing. He stated that if the commitment order was discontinued, "I honestly think I'd do okay." *Id*. at 19. W.S. testified that he does not believe that he suffers from any mental illness and that he would not voluntarily receive medication injections if not court-ordered to do so. W.S. stated that the injections are painful and make him feel violated, but that there is a "possibility" that he would voluntarily take an oral medication. *Id*. at 22.

4

Following the hearing, the trial court concluded that W.S. suffers from a mental illness and is gravely disabled, and therefore W.S.'s regular commitment and court-ordered medication should continue. This appeal ensued.[1]

**Discussion and Decision**

W.S.'s sole assertion on appeal is that the trial court's order continuing his regular commitment and the condition that he continue to take medication as prescribed are not supported by clear and convincing evidence.[2] Our well-settled standard of review and our relevant statutory law regarding civil commitment are as follows:

> When we review the sufficiency of the evidence of a civil commitment, we consider only the evidence most favorable to the trial court's judgment and the reasonable inferences arising therefrom. We will not reweigh the evidence or judge the witnesses' credibility. We will affirm the trial court's commitment order if it represents a conclusion that a reasonable person could have drawn, even if other reasonable conclusions are possible.
>
> …. Civil commitment is a significant deprivation of liberty that requires due process protections. Because everyone exhibits some abnormal conduct at one time or another, loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior. The petitioner … is required to prove by clear and convincing evidence that the individual is (1) mentally ill and (2) *either* dangerous *or* gravely disabled and that (3) commitment is appropriate. Ind. Code § 12-26-2-5(e). In order to carry its burden of proof, the petitioner is not required to prove that the individual is *both* dangerous *and* gravely disabled.

---

[1] We note that both parties refer to the existence of an appellant's appendix. While Midtown did file an appellee's appendix, appellant's appendix was never filed with this Court.

[2] In general, there are three types of commitments. An emergency detention limits the detention of an individual to seventy-two hours. Ind. Code § 12-26-5-1. A temporary commitment may be authorized for up to ninety days. Ind. Code § 12-26-6-1. "A regular commitment is the most restrictive form of involuntary treatment and is proper for an individual whose commitment is expected to exceed ninety days." *In re Commitment of R.L.*, 666 N.E.2d 929, 930 n.3 (Ind. Ct. App. 1996) (citing Ind. Code § 12-26-7-1).

However, there is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom.

*M.L. v. Meridian Servs., Inc.*, 956 N.E.2d 752, 755 (Ind. Ct. App. 2011) (quotation marks and some citations omitted).

**Section 1 – Gravely Disabled**

We initially note that W.S. does not challenge the trial court's finding that he suffers from mental illness pursuant to Indiana Code Section 12-7-2-130, which defines mental illness as a psychiatric disorder that substantially disturbs an individual's thinking, feeling, or behavior and impairs the individual's ability to function. Instead, W.S. contends that Midtown failed to present sufficient evidence to support the trial court's finding that he is gravely disabled.

"Gravely disabled" is defined as

a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:

(1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; *or*

(2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind. Code § 12-7-2-96 (emphasis added). As we have often noted, because this statute is written in the disjunctive, a trial court's finding of grave disability survives if we find that there was sufficient evidence to prove either that the individual is unable to provide for his basic needs or that his judgment, reasoning, or behavior is so impaired or deteriorated that it results in his inability to function independently. *See T.A. v. Wishard Health Servs.*, 950

6

N.E.2d 1266, 1271 n.2 (Ind. Ct. App. 2011); *A.L. v. Wishard Health Servs.*, 934 N.E.2d 755, 762 n.2 (Ind. Ct. App. 2010), *trans. denied* (2011).

The evidence most favorable to the trial court's determination that W.S. is gravely disabled indicates that he suffers from paranoid schizophrenia and has been the subject of numerous prior mental health commitments. Dr. Kellams testified that without medication and treatment, W.S. becomes delusional and paranoid and has come to the attention of the public and the police on multiple occasions after engaging in deviant and criminal behavior. Dr. Kellams testified that the regular commitment remains necessary to prevent W.S. from deteriorating into a chronic psychotic state. The record indicates that W.S.'s condition has somewhat stabilized with medication injections, but that he requires ongoing treatment to maintain this stabilized condition. Dr. Kellams stated that W.S. continues to lack insight into his mental illness. Indeed, W.S. testified that he does not believe that he suffers from mental illness and admitted that he would not voluntarily submit to treatment or his medication injections but for his commitment.

The foregoing evidence clearly and convincingly demonstrates that W.S. is in danger of coming to harm because he has a substantial impairment of his judgment, reasoning, and behavior that has resulted in his inability to function independently. *See, e.g., J.S. v. Ctr. for Behavioral Health*, 846 N.E.2d 1106 (Ind. Ct. App. 2006) (evidence supported finding that mental health patient would be gravely disabled if she stopped taking her antipsychotic medications), *trans. denied* (2007). W.S.'s assertion to the contrary is merely an invitation for us to reweigh the evidence, which we cannot do. *See M.L.*, 956 N.E.2d at 755. The trial

7

court's conclusion that W.S. is gravely disabled represents a conclusion that a reasonable person could have drawn based upon the evidence presented. W.S.'s regular commitment is supported by clear and convincing evidence.

## Section 2 – Medication

W.S. also challenges the commitment order's requirement that he continue to take all medications as prescribed. W.S. asserts that there was insufficient testimony presented to establish that continued court-ordered medication, specifically Haldol Decanoate injections, will substantially benefit him and that the probable benefits of the injections outweigh any risk of harm. W.S. additionally claims that there was no evidence that alternative treatments were considered and rejected and that the Haldol Decanoate injections represent the least restrictive treatment. Finally, W.S. asserts that the court's order impermissibly provides for the indefinite administration of court-ordered medication.

Midtown failed to respond to this issue in its appellee's brief. An appellee's failure to respond to an appellant's argument is akin to not filing a brief as to that issue. *Crider v. Crider*, 15 N.E.3d 1042, 1064 (Ind. Ct. App. 2014). Such failure permits us to reverse if W.S. has demonstrated prima facie error, which is error at first sight, on first appearance, or on the face of it. *Id*. "However, we are not relieved of our obligation to correctly apply the law to the facts in the record to determine whether reversal is required." *Id*.

A correct application of the law to the facts in the record leads us to the conclusion that remand for further hearing by the trial court is warranted. Our supreme court has recognized that a patient has a liberty interest in "remaining free of unwarranted intrusions

into his physical person and his mind," and "[i]t cannot be seriously disputed that forcible medication of a mental patient interferes with that liberty interest." *In re Mental Commitment of M.P.*, 510 N.E.2d 645, 646 (Ind. 1987). The *M.P.* court held that in order to override a patient's right to refuse treatment,

> the State must demonstrate by clear and convincing evidence that: 1) a current and individual medical assessment of the patient's condition has been made; 2) that it resulted in the honest belief of the psychiatrist that the medications will be a substantial benefit in treating the condition suffered, and not just in controlling the behavior or the individual; 3) and that the probable benefits from the proposed treatment outweigh the risk of harm to, and personal concerns of, the patient.
>
> Equally basic to court sanctionable forced medications are the following three limiting elements. First, the court must determine that there has been an evaluation of each and every other form of treatment and that each and every alternative form of treatment has been specifically rejected. It must be plain that there exists no less restrictive alternative treatment and that the treatment selected is reasonable and is the one which restricts the patient's liberty the least degree possible. Inherent in this standard is the possibility, that, due to the patient's objection, there may be no reasonable treatment available. This possibility is acceptable. The duty to provide treatment does not extend beyond reasonable methods. Second, the court must look to the cause of the commitment. Some handicapped persons cannot have their capacities increased by anti-psychotic medication. The drug therapy must be within the reasonable contemplation of the committing decree. And thirdly, the indefinite administration of these medications is not permissible. Many of these drugs have little or no curative value and their dangerousness increases with the period of ingestion. The court must curtail the time period within which they may be administered. If a patient does not substantially benefit from the medication, it should no longer be administered.

*Id*. at 647-48. At the hearing, the psychiatrist responsible for the treatment must testify, and the patient may present contrary expertise. *Id.*

We first address W.S.'s claim that the court's order impermissibly provides for the indefinite administration of court-ordered medication. Contrary to W.S.'s assertion, the order

9

here specifically provides a date, one year from the date of the order, for the review of W.S.'s treatment plan, which includes the condition that he take all medication as prescribed. Thus, the medication order meets the time limit requirement provided by *M.P.* *See also J.S.*, 846 N.E.2d at 1115 (holding that even if trial court's regular commitment and forced medication order does not specify time period for forced administration of medication, such order is not considered indefinite due to Indiana statutory law that requires at least annual review of regular commitment order and treatment plan).

Finding the medication order sufficiently limited in time, we turn to the court's consideration of the other factors required by *M.P.* There is no question that there was evidence before the court establishing that a current and individual medical assessment of W.S.'s condition had been made. There was also evidence clearly establishing that both Nurse Miller and Dr. Kellams honestly believe that the Haldol Decanoate injections provide a substantial benefit to W.S. and that such medication is invaluable and absolutely necessary to his treatment. Indeed, there was evidence presented that the probable benefits from the monthly injections outweigh the risk of harm to and personal concerns of W.S. as the record indicates that, despite the pain and violation W.S. feels from the injections, he would deteriorate into a chronic psychotic state without them. But, there does appear to be a lack of specific evidence presented that the injections provide a substantial benefit in treating W.S.'s schizophrenia, and not just controlling his behavior. Moreover, there is an absence of

10

evidence as to whether alternative treatments were evaluated and rejected or that the Haldol Decanoate injections represent the least restrictive treatment.[3]

Based upon the limited record before us, we agree with W.S. that there is insufficient evidence in the record regarding the court-ordered medication condition of his regular commitment. *See, e.g., M.L.*, 956 N.E.2d at 757-58 (finding evidence insufficient to support forced medication order during temporary commitment); *In re Commitment of J.B.*, 766 N.E.2d 795, 801 (Ind. Ct. App. 2002) (same). However, because we have already determined that continuation of W.S.'s regular commitment is appropriate based upon the clear and convincing evidence presented that his mental illness causes him to be gravely disabled, we conclude that remand to the trial court for further hearing on the medication issue is warranted under the circumstances. We are mindful that, absent the condition that W.S. take all medication as prescribed, W.S.'s regular commitment would not serve the crucial purpose of protecting him from the harm that he may suffer due to his grave disability. Thus, the appropriate solution is to remand this matter to the committing court to conduct further review of W.S.'s treatment plan, and specifically for the court to hear additional evidence regarding the factors enunciated by our supreme court in *M.P.* *See generally In re Commitment of G.M.*, 938 N.E.2d 302, 305 (Ind. Ct. App. 2010) (concluding that although basis for commitment order was unsupported by evidence, remand for additional review proceeding was more appropriate solution rather than termination of the commitment).

---

[3] It is noteworthy that this case involves the review of a regular commitment that began in 2009. W.S. failed to supply us with the original commitment order which provided for court-ordered medication. That original order, and the evidence supporting it, would likely shed light on many of the abovementioned concerns.

11

In sum, the trial court's conclusion that W.S. is mentally ill and gravely disabled is supported by clear and convincing evidence, and we affirm its order continuing W.S.'s regular commitment. We remand to the trial court for further hearing on the issue of court-ordered medication.

Affirmed and remanded.

RILEY, J., and MATHIAS, J., concur.