## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 26 2017, 6:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT:

Benjamin Loheide
Law Office of Benjamin Loheide
Columbus, Indiana

ATTORNEY FOR APPELLEE:

Steven J. Cohen
Zeigler Cohen & Koch
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |
|---|---|
| In Re the Involuntary Commitment of:<br><br>L.T.,<br><br>*Appellant-Respondent*,<br><br>v.<br><br>Columbus Regional Hospital Mental Health Center,<br><br>*Appellee-Petitioner*. | April 26, 2017<br><br>Court of Appeals Case No. 03A01-1611-MH-2543<br><br>Appeal from the Bartholomew Superior Court<br><br>The Hon. James D. Worton, Judge<br><br>Trial Court Cause No. 03D01-1609-MH-5380 |

**Bradford, Judge.**

# Case Summary

[1] In early September of 2016, Appellant-Respondent L.T. was found wandering the streets of Franklin, Indiana, and was admitted to Appellee-Petitioner Columbus Regional Hospital Mental Health Center ("the Hospital"). L.T. believed that unknown persons were attempting to control her through podcasts. The Hospital treated L.T. with anti-psychotic medication and kept her for approximately two weeks. L.T. refused to take advantage of any of the placement options offered by the Hospital, and returned the next day, essentially looking for a place to stay, leaving when told she could not stay without being admitted. Around a week later, L.T. was found sitting outside during a storm and was returned to the Hospital. L.T. had not taken medications as directed since her discharge and was still experiencing similar delusions as before. A Hospital psychiatrist diagnosed L.T. with schizophrenia, delusions, auditory hallucinations, and paranoia. Eventually, the Hospital applied for a commitment order. After the commitment hearing, the trial court found L.T. to be mentally ill and gravely disabled and ordered her involuntarily committed. L.T. contends that the Hospital failed to establish that she was gravely disabled. Because we disagree, we affirm.

# Facts and Procedural History

[2] Before September 29, 2016, L.T. had a significant history of mental illness, including a two-year commitment at the Richmond State Hospital that began in 2013. Following that commitment, L.T. was released to Centerstone Group,

which she left of her own accord. Since leaving Centerstone, L.T. has struggled with housing, has not complied with treatment, and "fell out of the system." Tr. Vol. II p. 9.

[3]     On September 6, 2016, L.T. was admitted to the Hospital after being found wandering around Franklin. L.T. had been homeless for approximately two to three weeks and "thought she was being controlled through pod-casts and that electronics such as cell phones[] and I-pads were somehow controlling her." Tr. Vol. II p. 6. L.T. also believed that she was a victim of voodoo, persons were burning her hair and skin, and somebody had recently shot at her. The Hospital started L.T. on anti-psychotic medication and held her for approximately two weeks before discharging her on September 19, 2016. Although the Hospital offered L.T. group home, shelter, and subacute facility placements, L.T. was not interested in any of those options and was "quite adamant that she wanted to find her own apartment." Tr. Vol. II p. 6.

[4]     L.T. returned to the Hospital on September 20, 2016, asking if she could stay "a few days[,]" but left when told that she would have to be admitted to the Hospital in order to stay. Tr. Vol. II p. 7. On September 28, 2016, L.T. was returned to the Hospital after being found sitting outside during a storm, but was not admitted until the next day. By this point, police had become involved and were concerned about L.T.'s mental state. L.T. had not taken Zyprexa as directed after being discharged on September 19, 2016. L.T. was verbalizing the same delusions as she had previously, *i.e.*, her beliefs that persons were trying to kill her, she had been "framed[,]" and "something happened" during

her previous admission to the Hospital. Tr. Vol. II p. 7. Dr. Michael Stark, the Hospital's inpatient psychiatrist, diagnosed L.T. with schizophrenia, delusions, auditory hallucinations, and paranoia. On September 29, 2016, an application for emergency detention of L.T. was filed on behalf of the Hospital.

[5] On October 7, 2016, a commitment hearing was held, at which Dr. Stark and L.T. testified. In the opinion of Dr. Stark, L.T.'s significant delusions and paranoia has led to her difficulty in providing housing for herself. L.T. has not complied with medications upon discharge from the Hospital, and her attempts to secure assistance from family or friends were unsuccessful. Dr. Stark also opined that involuntary commitment would be helpful to ensure compliance with medicinal therapy and to explore options for housing and that out-patient treatment would be inadequate. Dr. Stark believes that the least restrictive environment in which L.T. could receive treatment for her mental illness would be a regular commitment[1] and that state hospitalization would likely be necessary.

[6] L.T. testified concerning the pod-casts, telling the trial court, "I don't know how they do it, through Satellite, or how they do it, but they will put talking in and around by head" and claimed to have recorded some of that talking. Tr.

---

[1] In Indiana, an adult person may be civilly committed either voluntarily or involuntarily. Involuntary civil commitment may occur under four circumstances if certain statutorily regulated conditions are satisfied, including "Regular Commitment" for an indefinite period of time that may exceed 90 days pursuant to Indiana Code chapter 12-26-7.

Vol. II p. 12. When L.T. played back what she claimed was a tape recording of the voices she had heard, nothing was audible. Following the hearing, the trial court ordered a regular commitment, finding that L.T. was suffering from paranoid schizophrenia, was gravely disabled, and was in need of regular commitment for a period expected to exceed ninety days. The trial court's order also found that state hospitalization was the least restrictive environment suitable for necessary care and treatment and authorized the mental health staff to give L.T. whatever treatment was deemed necessary, regardless of consent.

# Discussion and Decision

## Whether L.T.'s Involuntary Commitment Is Supported by Sufficient Evidence

L.T. contends that the Hospital produced insufficient evidence to sustain her involuntary commitment.

> To obtain an involuntary regular commitment of an individual, a "petitioner is required to prove by clear and convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind. Code § 12-26-2-5(e) (2012).
>
> ….
>
> "[T]he purpose of civil commitment proceedings is dual: to protect the public and to ensure the rights of the person whose liberty is at stake." *In re Commitment of Roberts*, 723 N.E.2d 474, 476 (Ind. Ct. App. 2000), *trans. not sought*…. To satisfy the requirements of due process, the facts justifying an involuntary commitment must be shown "by clear and convincing evidence …. [which] not only communicates the relative importance our

legal system attaches to a decision ordering an involuntary commitment, but … also has the function of reducing the chance of inappropriate commitments." *Commitment of J.B. v. Midtown Mental Health Ctr.*, 581 N.E.2d 448, 450 (Ind. Ct. App. 1991) (citations omitted), *trans. denied.*

In reviewing the sufficiency of the evidence supporting a determination made under the statutory requirement of clear and convincing evidence, an appellate court will affirm if, "considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence." *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind. 1988).

*Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273-74 (Ind. 2015) (footnote omitted, first and second ellipses added).

[8]     The trial court found that L.T. was suffering from paranoid schizophrenia, and she does not contest the conclusion that she suffered from a mental illness. L.T. does, however, contest the trial court's finding that she was gravely disabled as defined in Indiana Code section 12-7-2-96:

"Gravely disabled", for purposes of IC 12-26, means a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
    (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
    (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

[9]     Indiana Code section 12-7-2-96 is written in the disjunctive, requiring a petitioner to prove only one prong of the definition of "gravely disabled":

> As we have often noted, because this statute is written in the disjunctive, a trial court's finding of grave disability survives if we find that there was sufficient evidence to prove either that the individual is unable to provide for his basic needs or that his judgment, reasoning, or behavior is so impaired or deteriorated that it results in his inability to function independently.

*Civil Commitment of W.S. v. Eskenazi Health, Midtown Cmty. Mental Health*, 23 N.E.3d 29, 34 (Ind. Ct. App. 2014), *trans. denied*. So, to the extent that L.T. argues that the Hospital was required to establish both prongs of section 12-7-2-96, this is incorrect.

[10] That said, we conclude that, at the very least, the Hospital produced sufficient evidence to establish by clear and convincing evidence that L.T. was unable to provide shelter for herself prior to her commitment. Following her release from a two-year commitment at Richmond State Hospital, L.T. was released to Centerstone Group, after which she struggled to find housing. On September 6, 2016, when L.T. was admitted to the Hospital after being found wandering around Franklin, Indiana, she had been homeless for approximately two to three weeks. After the Hospital discharged L.T. on September 19, 2016, she was not interested in any of the placement options offered by the Hospital and was "quite adamant that she wanted to find her own apartment." Tr. Vol. II p. 6. L.T. returned to the Hospital the very next day, asking if she could stay "a few days[,]" but left when told that she would have to be admitted to the Hospital in order to stay. Tr. Vol. II p. 7. On September 28, 2016, L.T. was returned to the Hospital after being found sitting outside during a storm.

[11] In addition to the substantial evidence that L.T. had not secured housing for herself in the days and weeks prior to her commitment, there was evidence that she would be unable to do so moving forward. Dr. Stark opined that L.T.'s mental illness, specifically her significant delusions and paranoia, led to her inability to secure housing. Moreover, the record indicates that there are no family or friends willing or able to provide L.T. with housing or assistance, and nobody appeared at the October 7, 2016, hearing to support her. The Hospital established by clear and convincing evidence that L.T. is mentally ill and gravely disabled pursuant to Indiana Code subsection 12-7-2-96(1).

[12] The judgment of the trial court is affirmed.

Najam, J., and Riley, J., concur.