# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 06 2017, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ernest P. Galos
Public Defender
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Commitment of M.W.,

*Appellant-Respondent,*

v.

Madison State Hospital,

*Appellee-Petitioner.*

December 6, 2017

Court of Appeals Case No.
71A03-1706-MH-1449

Appeal from the St. Joseph
Superior Court

The Honorable Margot F. Reagan,
Judge

Trial Court Cause No.
71D07-0908-MH-196

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent M.W. is a fifty-two year old man with a very long history of psychiatric illness and commitments. M.W. has been a patient at Appellee-Petitioner Madison State Hospital on a continual basis since 2014 when he was committed following an emergency detention. M.W.'s diagnosis is that he suffers from schizoaffective disorder.

[2] M.W.'s commitment has been reviewed periodically since 2014. During the most recent review of M.W.'s commitment, a staff psychiatrist stated that if M.W. does not stay on his medication, he is gravely disabled. In the past when M.W. has been released, he promptly stopped taking his medication. The psychiatrist further testified that prior to M.W.'s most recent hospitalization, he was not able to care for himself or provide food for himself and had very poor hygiene. After the hearing, the trial court found M.W. to be mentally ill and gravely disabled and ordered a continued commitment to Madison State Hospital. M.W. contends that Madison State Hospital failed to establish that he was gravely disabled. Because we disagree, we affirm.

# Facts and Procedural History

[3] On August 14, 2009, M.W. was admitted to the Madison State Hospital in South Bend, Indiana, after a doctor at the hospital filed an application for emergency detention of a mentally-ill person. In the application, the doctor indicated that M.W. had not been seen by anyone for a week, he refused to

answer his door, he was not taking his psychiatric and high blood pressure medications, and it was unknown if he was eating or showering. The doctor further indicated that M.W. would "continue to decompensate both mentally and physically" if he did not take his medications. App. Vol. III p. 20.

[4] On August 25, 2009, the trial court entered an order of regular commitment[1] following emergency detention. The order found M.W. to be suffering from a psychiatric disorder and gravely disabled and directed him to be committed to the Logansport State Hospital.

[5] On August 18, 2010, M.W. filed a request for a hearing for review or dismissal of his commitment, and the trial court conducted an evidentiary hearing on September 27, 2010. On September 30, 2010, the trial court entered an order that continued M.W.'s commitment to Logansport State Hospital. The trial court also made the following findings:

> In court [M.W.] testified under oath that his parents, the police officer, the neighbor, the doctor and the Adult Protective Services Investigator are "liars" and are "sick". He also insisted that he would not take his medication if he was discharged. He then qualified that statement by stating he would take his medicine if the court ordered him to do so. In addition to [M.W.]'s prescribed psychiatric medication, he is also required to take medication for high blood pressure and high cholesterol, but he also refuses to take medicine for medical conditions. The

---

[1] In Indiana, an adult person may be civilly committed either voluntarily or involuntarily. Involuntary civil commitment may occur under four circumstances if certain statutorily regulated conditions are satisfied, including "Regular Commitment" for an indefinite period of time that may exceed 90 days pursuant to Indiana Code chapter 12-26-7.

testimony showed that [M.W.] does not live in reality and that he must be supervised. All witnesses felt strongly that he cannot care for himself. Photographs of his apartment when he was not hospitalized were taken before he was committed in August of 2009. The apartment was littered with old food, the living space appeared extremely unsanitary, there were excessive amounts of mold, the bathtub and sink were clogged with rancid water (in court [M.W.] indicated that he uses the bathroom sink because the kitchen sink is clogged). He would barricade himself inside the house to keep out aliens, among others. According to his mother, he has turned burners and the oven on and left them on during the heat of summer. On one occasion he threw a cat onto the pavement, killing it. He nailed tea bags to the living room wall to disperse the effects of radiation. He exposed himself on several occasions. He called 911 on various occasions making illogical statements, and he damaged his apartment by pulling paneling off the walls, among other things. When viewing a photo with the paneling ripped off of the wall, he stated that there was great artwork on the other side of the paneling. His refrigerator appeared to be filled with putrid food and in general the photos supported testimony that his apartment was uninhabitable.

Appellant's App. Vol. II pp. 191–92. The trial court further noted that "[s]adly, over the last 20 years or so there has been a pattern of commitments for psychiatric treatment (more than twenty admissions) and whenever discharged, the behavior would always cause him to be recommitted." Appellant's App. p. 192.

[6] On or about December 15, 2010, M.W. was transferred from Logansport State Hospital to Richmond State Hospital. Richmond State Hospital filed a periodic report that same day. The report concluded that, among other things, M.W.

required supervision with involuntary medication administration order in order to prevent decompensation.

[7] The trial court continued M.W.'s commitment to Richmond State Hospital without a hearing on August 26, 2011. On September 15, 2011, M.W. filed another request for a hearing to review or dismiss the commitment. An evidentiary hearing was held on October 18, 2011. The trial court entered an order that continued M.W.'s commitment that same day finding that he suffered from a psychiatric disorder, was dangerous to himself, and was gravely disabled. On October 17, 2012, Richmond State Hospital filed a notification of discharge, which indicated that M.W.'s commitment was being transferred to Oaklawn Center with his discharge address being Metcalfe House in South Bend.

[8] On August 30, 2013, M.W. was admitted to Memorial Epworth Hospital in South Bend. The hospital submitted a periodic report on October 1, 2013, which said M.W. was schizophrenic, delusional, paranoid, a threat to animals, and sexually inappropriate. The report also indicated that M.W. placed himself in dangerous situations and could not provide for himself. The trial court entered an order to continue his commitment without a hearing that same day. On October 7, 2013, the trial court issued an order transferring M.W. to Madison State Hospital. On October 8, 2013, the trial court issued an amended order of regular commitment and found M.W. to be a danger to others and gravely disabled.

[9]     On April 17, 2014, Madison State Hospital requested the transfer of M.W.'s commitment to Oaklawn. On April 23, 2014, M.W. was discharged from Madison State Hospital and placed at Oaklawn. M.W.'s discharge instructions focused on his needing to stay on his medication. However, M.W. refused to sign the discharge form.

[10]    In July of 2014, M.W. escaped from Oaklawn, and on July 18, 2014, the trial court ordered his apprehension and return. Oaklawn filed a periodic report on October 14, 2014, which concluded that M.W. was chronically ill, a danger to himself and others, and gravely disabled. On October 22, 2014, a doctor with Memorial Epworth Hospital requested a hearing to change M.W.'s commitment from outpatient to regular patient because he was not complying with treatment and was increasingly paranoid and aggressive. A doctor at Oaklawn reported that M.W. refused medication and psychiatric treatment, set fire to a phone book, beat up his housemate, threatened his neighbors, and believed people were watching him through mirrors. On October 28, 2014, the trial court entered an order of regular commitment following emergency detention and directed that M.W. be committed to any available state hospital. M.W. was transported to Madison State Hospital on November 24, 2014.

[11]    On October 14, 2015, Madison State Hospital filed a periodic report in which it concluded that M.W. suffered from schizophrenia, was dangerous to others, he was gravely disabled, and had substantially impaired judgment. The trial court continued M.W.'s commitment without a hearing that same day.

[12]  On October 21, 2016, the trial court continued M.W.'s commitment again due to concerns raised in the periodic report. On December 28, 2016, M.W. requested another hearing for the review or dismissal of his commitment. The hearing was conducted on May 31, 2017. Gwen Heaton, a psychiatrist from Madison State Hospital who had been treating M.W. since 2013, testified at the hearing from the hospital. Dr. Heaton testified that M.W. needed to go to a locked facility to ensure that he stayed there and took his medication if he was discharged. A locked facility is very different from a hospital because patients are able to set their own routines and go on outings. Such facilities do not force the patients to take their medication but encourage them to do so.

[13]  Dr. Heaton further opined that "[i]f he does not stay on the medication, he's gravely disabled. He, prior to the hospitalization, was not able to take care of himself, provide food for himself. His hygiene was extremely poor. Adult Protective Services got involved because of concerns about his safety." Tr. Vol. II p. 13. If M.W. took his medication, he would be capable of caring for himself. Without the medication, M.W. could be dangerous to other people. When the trial court judge asked M.W. if he would take his medication if he were released from the hospital, M.W. initially said he would take the medication if he had to. M.W., however, went on to say "I see no reason for me to have to take meds. And I've got everything going for me, I see no reason to agree to it. I am not agreeable to it, and that's against my rights and that is my answer." Tr. Vol. II pp. 28–29. Following the hearing, the trial court

entered an order continuing M.W.'s regular commitment, finding that M.W. was mentally ill and gravely disabled.

# Discussion and Decision

## Whether M.W.'s Commitment is Supported by Sufficient Evidence

[14] M.W. contends that the trial court's determination that he was mentally ill, gravely disabled, and required continued commitment to Madison State Hospital was not supported by clear and convincing evidence.

> To obtain an involuntary regular commitment of an individual, a "petitioner is required to prove by clear and convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind. Code § 12-26-2-5(e) (2012).
>
> ….
>
> "[T]he purpose of civil commitment proceedings is dual: to protect the public and to ensure the rights of the person whose liberty is at stake." *In re Commitment of Roberts*, 723 N.E.2d 474, 476 (Ind. Ct. App. 2000), *trans. not sought*…. To satisfy the requirements of due process, the facts justifying an involuntary commitment must be shown "by clear and convincing evidence …. [which] not only communicates the relative importance our legal system attaches to a decision ordering an involuntary commitment, but … also has the function of reducing the chance of inappropriate commitments." *Commitment of J.B. v. Midtown Mental Health Ctr.*, 581 N.E.2d 448, 450 (Ind. Ct. App. 1991) (citations omitted), *trans. denied.*

> In reviewing the sufficiency of the evidence supporting a determination made under the statutory requirement of clear and convincing evidence, an appellate court will affirm if, "considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence." *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind. 1988).

*Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273–74 (Ind. 2015) (footnote omitted, first and second ellipses added).

[15] M.W. does not contest the trial court's conclusion that he suffers from a mental illness. M.W. does, however, contest the trial court's finding that he was gravely disabled as defined in Indiana Code section 12-7-2-96:

> "Gravely disabled", for purposes of IC 12-26, means a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> > (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
> >
> > (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

[16] "As we have often noted, because this statute is written in the disjunctive, a trial court's finding of grave disability survives if we find that there was sufficient evidence to prove either that the individual is unable to provide for his basic needs or that his judgment, reasoning, or behavior is so impaired or

deteriorated that it results in his inability to function independently." *Civil Commitment of W.S. v. Eskenazi Health, Midtown Cmty. Mental Health*, 23 N.E.3d 29, 34 (Ind. Ct. App. 2014).

[17] The evidence most favorable to the trial court's determination that M.W. is gravely disabled indicates that he has consistently been diagnosed with schizophrenia or paranoid schizophrenia and has been the subject of numerous prior mental health commitments. There is also evidence that M.W.'s refusal to take medication outside of a structured environment and inability to function independently has been a problem since at least 2010. The last two times doctors have tried to treat M.W. through outpatient treatment have ended badly. The first time ended with M.W. being admitted to an acute care hospital. The second time M.W. was being treated through outpatient treatment he escaped from a group home. Finally, Dr. Heaton testified that M.W. is gravely disabled if he does not stay on his medication.

[18] The only evidence supporting M.W.'s claim that he is not gravely disabled was his own testimony at the May 31, 2017, hearing in which he said he would take his medication if there was a court order to that effect. This testimony, however, was inconsistent with his own statements that he did not believe that he required medication. Moreover, M.W. has a history of not taking his medication after being released from the hospital. In the end, M.W.'s arguments are merely a request for us to reweigh the evidence which we will not do. *Commitment of B.J. v. Eskenazi Hosp./Midtown CMHC*, 67 N.E.3d 1034, 1038 (Ind. Ct. App. 2016). The Madison State Hospital established by clear

and convincing evidence that M.W. is mentally ill and gravely disabled pursuant to Indiana Code subsection 12-7-2-96(1).

[19] The judgement of the trial court is affirmed.

Robb, J., and Crone, J., concur.