# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2020, 10:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Josh J. Minkler
United States Attorney

Chadwick C. Duran
Special Assistant United States
Attorney
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the
Commitment of M.K.,

*Appellant-Respondent,*

v.

Department of Veterans Affairs,
Richard L. Roudebush VA
Medical Center,

*Appellee-Petitioner*

November 30, 2020

Court of Appeals Case No.
20A-MH-1054

Appeal from the Marion Superior
Court

The Honorable Melanie Kendrick,
Judge Pro Tempore

Trial Court Cause No.
49D08-2004-MH-14532

**Crone, Judge.**

# Statement of the Case

M.K. appeals his temporary involuntary commitment. He argues that the trial court's commitment order is not supported by clear and convincing evidence that he is gravely disabled. Concluding that the evidence is sufficient, we affirm.

# Facts and Procedural History

M.K. is a thirty-year-old male who has been diagnosed with unspecified schizophrenia spectrum disorder. On April 23, 2020, M.K.'s father brought him to the Richard L. Roudebush Veterans Affairs Medical Center (the Hospital) due to concerns about his mental health and well-being. Earlier that evening M.K.'s father had gone to check on M.K. at his apartment after M.K.'s mother had told his father that M.K. had called her and was acting very confused. When M.K.'s father arrived, he observed that the apartment was in terrible disarray and that there was blood on the carpet and a hole punched in the entertainment center. M.K. was not present, so his father went looking for him. M.K.'s father eventually located M.K. walking down the street barefoot, with his foot bleeding, almost two miles away from the apartment. When M.K.'s father found him, M.K. did not seem to recognize his father at first, and he was acting bizarrely and giving peculiar answers to questions. When asked about the bleeding wound on his foot, M.K. told his father that he would just drink some alcohol to sterilize the wound.

[3] At the Hospital, M.K. received an x-ray that revealed he had broken glass in his foot. Emergency room staff removed the glass from M.K.'s foot and treated the wound topically. While in the emergency room, M.K. was noncompliant with the healthcare providers as they were trying to treat him, and he exhibited signs of paranoia and delusional ideation as he continually walked around barefoot with his foot still bleeding.

[4] Accordingly, M.K. was admitted to the psychiatric unit, and the Hospital filed an application for emergency detention. Thereafter, on April 28, 2020, the Hospital filed its report along with a physician statement seeking M.K.'s involuntary regular commitment. Following a hearing on April 30, 2020, the trial court entered its order for involuntary regular commitment based upon its finding that M.K. was suffering from mental illness and that he was gravely disabled. This appeal ensued.

## Discussion and Decision

[5] M.K. contends that there was insufficient evidence to support his involuntary regular commitment because the Hospital did not prove by clear and convincing evidence that he is gravely disabled. As a preliminary matter, we observe that M.K.'s appeal is arguably moot because ninety days have elapsed since the trial court issued its order and M.K. has likely been released from his involuntary commitment. "When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed." *In re Commitment of J.M.*, 62 N.E.3d 1208, 1210 (Ind. Ct. App. 2016) (quoting *In re J.B.*, 766 N.E.2d 795, 798 (Ind. Ct. App. 2002)). However, "Indiana recognizes a public interest

exception to the mootness doctrine, which may be invoked when the issue involves a question of great public importance which is likely to recur." *T.W. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 121 N.E.3d 1039, 1042 (Ind. 2019) (quoting *Matter of Tina T.*, 579 N.E.2d 48, 54 (Ind. 1991)). "[A]n involuntary commitment is of great public interest and involves issues which are likely to recur, so we generally choose to address the merits of such appeals, despite the mootness of the case." *B.D. v. Ind. Univ. Health Bloomington Hosp.*, 121 N.E.3d 1044, 1048 (Ind. Ct. App. 2019).

[6] "'[T]he purpose of civil commitment proceedings is dual: to protect the public and to ensure the rights of the person whose liberty is at stake.'" *T.K. v. Dep't of Veterans Affs.*, 27 N.E.3d 271, 273 (Ind. 2015) (quoting *In re Commitment of Roberts*, 723 N.E.2d 474, 476 (Ind. Ct. App. 2000)). "The liberty interest at stake in a civil commitment proceeding goes beyond a loss of one's physical freedom, and given the serious stigma and adverse social consequences that accompany such physical confinement, a proceeding for an involuntary civil commitment is subject to due process requirements." *Id.*

[7] To satisfy due process, the facts justifying an involuntary commitment must be shown by clear and convincing evidence. *In re Commitment of G.M.*, 743 N.E.2d 1148, 1151 (Ind. Ct. App. 2001). Clear and convincing evidence is defined as an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt. *T.D. v. Eskenazi Midtown Cmty. Mental Health Ctr.*, 40 N.E.3d 507, 510 (Ind. Ct. App. 2015). In order to be clear and convincing, the existence of a fact must be highly probable. *Id.* When we

review the sufficiency of the evidence supporting an involuntary commitment, we will affirm if, "considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find [the necessary elements] proven by clear and convincing evidence." *T.K.*, 27 N.E.3d at 273 (citation omitted).

[8] To obtain an involuntary commitment, the petitioner is "required to prove by clear and convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind. Code § 12-26-2-5(e). M.K. does not dispute that he is mentally ill. His sole challenge to the sufficiency of the evidence revolves around the trial court's finding that he is gravely disabled.[1]

[9] Gravely disabled is defined as:

> a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>
> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

[1] The trial court did not make a finding that M.K. is dangerous.

Ind. Code § 12-7-2-96. Because this definition is written in the disjunctive, it is not necessary to prove both prongs to establish grave disability. *W.S. v. Eskenazi Health, Midtown Cmty. Mental Health*, 23 N.E.3d 29, 34 (Ind. Ct. App. 2014), *trans. denied* (2015). In other words, a trial court's finding of grave disability survives if we determine that there was sufficient evidence to prove either that the individual is unable to provide for his basic needs or that his judgment, reasoning, or behavior is so impaired or deteriorated that it results in his inability to function independently. *Id.*

[10] The record here indicates that M.K. has been experiencing psychosis and been in and out of the Hospital since December 2017. He had been admitted to the Hospital just a month before the current admission after his father became concerned with his mental health. M.K.'s treating physician during his current admission, Dr. Andrew Filipowicz, stated that according to medical records, M.K.'s symptoms and problematic behavior had increased since his last admission and that they had seen "an uptick" in M.K.'s concerning behavior. Tr. Vol. 2 at 16. When asked if he believed that M.K. is gravely disabled, Dr. Filipowicz stated, "I do." *Id.* at 17. Dr. Filipowicz opined that M.K.'s judgment had deteriorated, and he was unable to function independently because he had clearly demonstrated "that he is not able to make rational choices in his best interest." *Id.*

[11] As just one example of M.K.'s impaired and/or deteriorated judgment, Dr. Filipowicz observed that "it is unreasonable to walk two miles on bare feet and with blood all over the sidewalk and all over the ER" and that such behavior

"showed a pretty severe lack of judgment[,]" not to mention a risk of infection. *Id*. at 17-18, 21. Dr. Filipowicz further noted that M.K.'s goals of living independently and continuing his education would be quite difficult "if he were to continue to have the cognitive disruptions as evidenced by [his] behavior." *Id*. at 18. Dr. Filipowicz stated that he worried that a lack of intervention "would potentially exasperate [M.K.'s] paranoia," *id*. at 21, and that a prominent aspect of M.K.'s exhibited behavior was disorganization of thought. During M.K.'s admission in the Hospital, at least two disruptive behavior reports were filed, one of which involved the Hospital issuing a "code orange[,]" which is a "behavior alert – alerting that a patient is acting in an aggressive or agitated way such that there might be concern[s] for the patient's safety or that of other patients ...." *Id*. at 12. Dr. Filipowicz made clear that M.K. has no insight into his mental illness and refuses to take any prescribed medication to treat it.

[12] M.K.'s father testified that he fully supported his son's involuntary regular commitment because he is worried that M.K.'s paranoid and irrational behavior had recently worsened, and that M.K. was having an extremely hard time "processing – thought process." *Id.* at 26. M.K.'s father testified that his apartment, which had been very clean, was suddenly in total disarray and basically "all upside down." *Id*. at 25. M.K.'s father expressed concern that because of his increased paranoia, M.K. had started keeping a large knife in every room of his apartment, carries a knife in his car, and often carries a knife on his person. His father stated that he has great fear that M.K. "is going to get

out somewhere and somebody is going to take him the wrong way and he is going to get hurt or he is going to hurt himself …." *Id*. at 24. M.K.'s father explained that M.K. is not employed and that, while he had been enrolled in classes, he had gotten behind, and his father questioned "if the thought process is there that he could actually do the work right now … in his current condition." *Id.* at 27. M.K.'s father stated that M.K.'s judgment had deteriorated to a point where it was interfering with his ability to safely live independently but that hopefully "if we can get him on a program with medicine … maybe he can have a nice fruitful life and get on track …." *Id*. at 28.

[13] Based upon the foregoing, a reasonable trier of fact could find that the necessary elements of grave disability have been proven by clear and convincing evidence. Contrary to M.K.'s assertion on appeal, this case does not simply boil down to an overblown "concern about the small piece of glass" in his foot. Reply Br. at 4. Rather, the evidence demonstrates clearly and convincingly that M.K., as a result of his mental illness, is in danger of coming to harm because he has undergone a substantial impairment or obvious deterioration of his judgment, reasoning, and behavior that has left him unable to function independently. Therefore, we affirm M.K.'s temporary involuntary commitment.

[14] Affirmed.

Najam, J., and Riley, J., concur.