

I N T H E

# Court of Appeals of Indiana

Jason Brown,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

May 02 2025, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

May 2, 2025

Court of Appeals Case No.
24A-CR-2555

Appeal from the Jay Superior Court

The Honorable Gail M. Dues, Judge

Trial Court Cause No.
38D01-1910-F5-000002

---

**Opinion by Judge Felix**
Judges Mathias and Foley concur.

**Felix, Judge.**

## Statement of the Case

After being charged with multiple offenses, Jason Brown was found not guilty by reason of insanity, and the State filed a petition to have Brown involuntarily committed. Following a hearing, the trial court ordered Brown to inpatient commitment. After a subsequent evaluation, the trial court released Brown from his inpatient commitment and ordered him to outpatient commitment. Brown appeals and presents one issue for our review: Whether the State presented sufficient evidence to support Brown's inpatient commitment.

We affirm.

## Facts and Procedural History

On September 2, 2019, Brown was sitting in a truck at a park in Ohio when a law enforcement officer approached the vehicle. Brown had stolen the truck and did not have a valid driver's license. After Brown gave him a fake name, the officer walked back to his vehicle to run information on the truck. Instead of waiting for the officer to return, Brown fled the scene. A chase ensued that included two patrol cars following Brown, but he eventually evaded law enforcement. The following day, the truck was found abandoned in Jay County, Indiana. Brown had left a bag of clothing and documents with his name in the truck.

[4] The State charged Brown with operating a vehicle while license suspended as a habitual traffic violator as a Level 5 felony and auto theft as a Level 6 felony; the State also alleged Brown was a habitual offender. On June 6, 2021, Brown filed a motion for competency evaluation, which the trial court granted. Two physicians submitted reports in which they concluded that Brown was not competent to stand trial, citing his "paranoid ideation" and "delusional thinking," Appellant's App. Vol. II at 102, as well as observations that suggest "he is hearing voices," *id.* at 106. In July, Brown and the State entered an agreed stipulation to his incompetency, and Brown was committed to the Division of Mental Health and Addiction ("DMHA"), which later placed Brown at Logansport State Hospital for competency restoration services. In August 2022, Logansport State Hospital notified the trial court that Brown's competency had been restored and that he could stand trial.

[5] Brown failed to appear for his December 2022 trial, so the trial was conducted in absentia; Brown was found guilty as charged. In April 2023, the trial court set aside those verdicts once it learned that, on the day of the trial, Brown was being held at Parkview Health Services on an emergency detention order. Parkview staff described Brown's condition as "grossly psychotic," "not cooperative," and "delusional." Ex. Vol. III at 64–65. During his stay at Parkview, Brown was "[u]nwilling to take meds" and threatened to "beat [a doctor's] face in." *Id.* at 65.

[6] As the parties were getting ready for a retrial, in December 2023, the State filed a motion for a competency evaluation of Brown, stating it "is concerned at this

point whether the Defendant is competent to stand trial and fears that another conviction will be set aside or overturned based on the Defendant's inability to understand the proceedings." Appellant's App. Vol. III at 12. Ultimately, the trial court again found Brown incompetent and committed him to DMHA for competency restoration services. In April 2024, Hendricks Behavioral Health submitted a report indicating that Brown was competent to stand trial.

[7] Two months later, the State filed a motion for psychiatric evaluation of Brown, indicating that it believed Brown needed to be committed under Indiana Code section 12-26-7, expressing a willingness to stipulate to an order finding Brown not guilty by reason of insanity, and requesting that Brown undergo an evaluation with Dr. Craig Buckles. The trial court granted the State's motion, and Dr. Buckles evaluated Brown on July 13. On July 31, 2024, the State filed a petition for the involuntary commitment of Brown. With its petition, the State filed a statement from Dr. Buckles where he in part indicated:

> [Brown] does not appear to be psychotic or dangerous now. He would be able to provide for his own care and is not gravely disabled. He is, however, likely to become psychotic again due to his refusal to take medicines or cooperate with psychiatric treatment. It is also possible that he would return to drug use if at home. He would benefit from a commitment to psychiatric treatment that would exceed 90 days at a community mental health center with an order to continue medicines as prescribed and mandatory drug screens.

Appellant's App. Vol. III at 44. On August 1, Brown and the State entered an agreed order in this cause, stipulating to a verdict of not guilty by reason of

insanity. In the order, Brown agreed to be detained until the completion of the commitment hearing.

[8] On September 27, 2024, the trial court held a hearing on the State's petition for the involuntary commitment of Brown. There, Dr. Buckles testified regarding Brown's July evaluation and reiterated that Brown was not gravely disabled at the time of evaluation but would likely become psychotic if he stopped taking his medication upon release. Brown also testified at the hearing, claiming he did not have a long criminal history and refuting the charges against him in this cause.

[9] On October 3, 2024, several documents were filed. Based on the record we have, it is not possible to determine the order in which the documents were filed; however, the CCS does show these three documents were filed on October 3: (1) the State's motion for evaluation of Brown to determine whether commitment to a state institution by DMHA was appropriate; (2) Brown's objection to the State's motion; and (3) the trial court's order of commitment, concluding Brown was gravely disabled and ordering an inpatient commitment with DMHA. That same day, the trial court appointed Meridian Health to conduct an evaluation of Brown. Following the evaluation from Meridian Health, on December 12, the trial court entered an order releasing Brown from custody and ordering outpatient commitment. Brown now appeals.

# Discussion and Decision

## The State Provided Sufficient Evidence to Support Brown's Commitment

[10] Brown appeals from the trial court's October 3 order, which ordered him to inpatient commitment at a mental health facility, claiming that the State's petition for commitment was insufficient and the evidence provided at the subsequent hearing was insufficient to order his commitment. We have recently explained our standard of review for sufficiency claims in the civil commitment context:

> When reviewing the sufficiency of the evidence to support an individual's involuntary civil commitment, we neither reweigh the evidence nor judge the credibility of witnesses. *Civ. Commitment of T.K. v. Dep't of Veterans Affs.*, 27 N.E.3d 271, 273 (Ind. 2015). Instead, we consider the evidence and reasonable inferences most favorable to the judgment, and we will affirm if a reasonable trier of fact could have found the necessary elements proven by clear and convincing evidence. *Id.*

*T.G. v. Cmty. Health Network*, 250 N.E.3d 490, 496 (Ind. Ct. App. 2025).

[11] Initially, the State argues that Brown's appeal is moot and there is no effective relief we can provide because, after the October 3 order, the trial court ordered an additional psychological evaluation and ordered Brown to undergo outpatient commitment. However, because Brown is still under a commitment order which originated from the initial order for commitment, we conclude that we can provide effective relief and his appeal is not moot. *See E.F. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 188 N.E.3d 464, 466 (Ind. 2022).

[12]     Brown points to alleged errors in the State's petition for involuntary commitment and the initial commitment order. First, Brown contends the State failed to comply with statutory requirements in its petition for involuntary commitment, pointing to Dr. Buckles's statement where he concluded that Brown was not gravely disabled during the July evaluation. A petition for commitment requires, amongst other things, "a physician's written statement that states . . . *the physician believes that the individual is mentally ill and either dangerous or gravely disabled*." Ind. Code § 12-26-7-3 (a)(2)(A) (emphasis added). While it abundantly clear that Dr. Buckles's statement indicates that Brown was neither dangerous nor gravely disabled, it is also abundantly clear that Brown agreed to be detained until the completion of his commitment hearing in exchange for a verdict of not guilty by reason of insanity on all of his charges. *See Lee v. State*, 816 N.E.2d 35, 38 (Ind. 2004) (citing *Bennett v. State*, 802 N.E.2d 919, 921 (Ind. 2004)) ("Our courts have long held that plea agreements are in the nature of contracts entered into between the defendant and the State."). Brown cannot accept the benefit of the plea knowing there was a deficiency in the petition and then argue that the deficiency should invalidate his commitment but not his beneficial plea. *See Crider v. State*, 984 N.E.2d 618, 625 (Ind. 2013) (citing *Lee*, 816 N.E.2d at 40) ("Absent due process concerns to the contrary, when a defendant explicitly agrees to a particular sentence or a specific method of imposition of sentences, whether or not the sentence or method is authorized by the law, he cannot later appeal such sentence on the ground that it is illegal."). Second, Brown claims that his inpatient commitment to DMHA was erroneous, arguing that the record does not have

the statutorily required report from a community mental health center. However, the trial court cured any error by releasing Brown from inpatient treatment and ordering outpatient commitment; thus, Brown's argument on this issue is moot, *see E.F.*, 188 N.E.3d at 466.

[13] Finally, Brown also argues that the State failed to prove that he was gravely disabled as a result of his mental illness. Our legislature has defined gravely disabled as:

> [A] condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> > (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
> >
> > (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

I.C. § 12-7-2-96. "Because the definition of grave disability is written in the disjunctive, the evidence needs to support only one of those two prongs for a person to be found gravely disabled." *A.S. v. Indiana Univ. Health Bloomington Hosp.*, 148 N.E.3d 1135, 1140 (Ind. Ct. App. 2020) (citing *A.L. v Wishard Health Servs.*, 934 N.E.2d 755, 760 (Ind. Ct. App. 2010)). The State was required to prove Brown was gravely disabled by clear and convincing evidence. *See* I.C. § 12-26-2-5(e)(1).

[14] Brown claims that the State failed to prove he was gravely disabled because the record shows that he had recently benefited from medication and Dr. Buckles testified that Brown was neither dangerous or gravely disabled. We were met with a similar set of circumstances in *W.S. v. Eskenazi Health, Midtown Cmty. Mental Health,* 23 N.E.3d 29 (Ind. Ct. App. 2014). There, W.S. suffered from paranoid schizophrenia and had undergone multiple prior mental health commitments. *W.S.*, 23 N.E.3d at 34. The evidence at his commitment hearing showed that "W.S.'s condition [had] somewhat stabilized with medication injections," but he needed ongoing treatment to maintain that condition. *Id.* The record included testimony from the physician who treated W.S. which stated that "without medication and treatment, W.S. becomes delusional and paranoid and has come to the attention of the public and the police on multiple occasions after engaging in deviant and criminal behavior" and that "regular commitment remains necessary to prevent W.S. from deteriorating into a chronic psychotic state." *Id.* We concluded that this evidence was sufficient to show W.S. was gravely disabled in that the evidence demonstrated by clear and convincing evidence that W.S. was in danger of coming to harm due to a substantial impairment of his judgment, reasoning, and behavior that resulted in his inability to function independently. *Id.*

[15] Here, the evidence clearly and convincingly demonstrates that Brown was gravely disabled. While Dr. Buckles testified that Brown had stabilized due to his current medication regimen, he also testified that if Brown stopped taking his medication "his psychosis is likely to return, and that could potentially lead

to behavior similar to what he had before or potentially even worse." Tr. Vol. II at 219. Also, Dr. Buckles testified that Brown believed that he did not need to take medication or psychiatric treatment to reduce his delusions or hallucinations. In other words, it was exceedingly likely that Brown would discontinue his medications at his first opportunity. Additionally, in Brown's own testimony, he refuted evidence of his long criminal record, testified about being followed by drones and a SWAT team, stated he lived under a different name for years, and claimed the State had filed false charges against him in this cause. Dr. Buckles's testimony that Brown did not want to take medication and could become "even worse" as a result combined with Brown's own testimony convinces us that there was sufficient evidence to permit a factfinder to reasonably conclude that Brown was gravely disabled at the time of the hearing. We conclude that the State provided sufficient evidence to prove that Brown was gravely disabled, and we affirm the trial court's commitment.

[16] Affirmed.

Mathias, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Brandon E. Murphy
Cannon Bruns & Murphy
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana